911 So.2d 823 (2005)
MEDICAL LOGISTICS, INC. and CNA Claimplus, Appellants,
v.
John MARCHINES, Appellee.
No. 1D04-1367.
District Court of Appeal of Florida, First District.
August 29, 2005.
M. Michele Leach-Pachinger and Tonya Willis Pitts of Clark, DeMay, Fara & Froman, *824 A Professional Association, Sarasota, for Appellants.
Harold E. Barker of Dicesare, Davidson & Barker, P.A., Lakeland, for Appellee.
ALLEN, J.
The employer/carrier appeal a workers' compensation order by which their fraud defense was denied and various benefits were awarded to the claimant. Although the evidence was sufficient to support each of the awards and did not compel a ruling in favor of the employer/carrier on its fraud defense, we reverse the order under review because the judge of compensation claims applied a per se rule, rather than the required case-specific analysis, in excluding surveillance evidence.
The judge issued a pretrial order directing that all discovery be noticed and submitted to the opposing party at least thirty days prior to the date of the final hearing. Twenty-one days prior to the final hearing, the claimant's counsel received copies of surveillance tapes from counsel for the employer/carrier. When the employer/carrier attempted to introduce these tapes at the final hearing, the claimant objected to their admission on the grounds that they were "untimely" and "unjustly prejudicial." Without inquiry as to how the claimant might have actually been procedurally prejudiced by the admission of the tapes, and acknowledging that the employer/carrier's counsel had, upon his receipt of the tapes, promptly forwarded copies to the claimant's counsel, the judge ruled that the tapes would not be admitted into evidence. The judge explained that his ruling was based upon his uniform policy that an employer/carrier's failure to provide notice of surveillance evidence at least thirty days prior to a final hearing will always result in a finding of procedural prejudice to a claimant.
Although a judge has broad discretion in determining whether to exclude evidence due to a party's failure to disclose the evidence within the time required by a pretrial order, the exclusion of such evidence is a drastic remedy which should pertain in only the most compelling circumstances and only after the judge has made a case-specific determination as to whether admission of the evidence would result in actual procedural prejudice to the objecting party. Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981). The Binger court prescribed three factors to be considered by the judge in making this determination: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the evidence; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case. The court explained that a judge should not exclude the evidence if consideration of these and other relevant factors reveals that use of the evidence would not substantially endanger the fairness of the proceeding.
Binger involved civil litigation in the circuit court, but the principles laid down there are appropriately applied outside that context. For example, the Binger analysis is quite similar to that prescribed by the supreme court for dealing with discovery violations in the criminal context, see Richardson v. State, 246 So.2d 771 (Fla.1971), and we have applied Binger in workers' compensation cases. See, e.g., Cedar Hammock v. Bonami, 672 So.2d 892 (Fla. 1st DCA 1996); Walters v. Keebler Co., 652 So.2d 976 (Fla. 1st DCA 1995).
Because the per se rule applied by the judge in the present case is antithetical to the case-specific analysis prescribed in Binger, the exclusion of the surveillance tapes on this basis was an abuse of discretion *825 and cannot be sustained. The order under review is accordingly reversed, and the case is remanded.
WOLF, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, J., dissenting.
The majority opinion reverses the judge of compensation claims for entering an order setting a discovery deadline, and then enforcing the deadline. This unwarranted diminution of the judge's authority is a step backward in developments that commentators agree make not only for greater efficiency but also for more fairness in the run of cases:
Through the cooperative exchange of information, discovery was intended to narrow issues that remained in dispute, equalize knowledge among the parties about the evidence, eliminate trickery or surprise at trial, and, as a result, increase the likelihood that justice would be efficiently achieved during both pretrial negotiation and trial.
Charles W. Sorenson, Jr., Disclosure Under Federal Rule of Civil Procedure 26(A)`Much Ado About Nothing?', 46 Hastings L.J. 679, 690-91 (1995). The technique the judge of compensation claims employed in the present case is thought to be particularly helpful in disposing of casesby settlement, as well as by trialat less cost and with less delay:
Empirical studies reveal that when a trial judge intervenes personally at an early stage to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps, the case is disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices. . . . [Federal Rule of Civil Procedure 26(b)] contemplates greater judicial involvement in the discovery process. . . . Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision.
John S. Beckerman, Confronting Civil Discovery's Fatal Flaws, 84 Minn. L.Rev. 505, 564 (2000) (quoting Fed.R.Civ.P. 16 & 26(b) advisory committee's notes to the 1983 amendments). "Early discovery cutoff dates and firm trial dates were recognized as the best court management tool to reduce the costs of discovery, and the RAND Institute data appear to have confirmed that conclusion." Comm. on Rules of Practice and Procedure of the Judicial Conference of the U.S., Reports of the Advisory Committee on Civil Rules (Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure and Evidence Aug. 1998), reprinted in 181 F.R.D. 18, 27 (Aug.1998).
In Binger v. King Pest Control, 401 So.2d 1310, 1313 (Fla.1981), our supreme court approved a district court decision reversing for a new trial because an unlisted witness had been permitted to testify, and stated explicitly "that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order." A discovery cutoff date is in some sense arbitrary, just as a trial date is. But for a discovery cutoff date to serve its purpose, discovery must actually be cut off, unless there is some good reason not to cut it off. The surveillance tapes in issue here were offered as substantive evidence, not as impeachment evidence. Compare Fla. Admin. Code R. 60Q-6.113(2) (2005); Eaton Corp. v. Votour, 895 So.2d 466, 467 (Fla. 1st DCA 2005).
When the judge of compensation claims inquired, in the present case, why the surveillance tapes were not furnished to *826 claimant's counsel by the deadline, counsel for the employer and the carrier, responding that he had not been at fault personally, offered no explanation for why the insurance carrier or its agents had not handed over copies in time for him to comply with the order. Counsel for the employer and the carrier said: "As soon as I got it, I was asking for it, as soon as the tapes were made and as soon as the reports were received by the carrier, they got them over." But it became clear that the tapes had been available, if not to counsel, then to his client, in time to comply with the judge's order. The judge of compensation claims ruled: "[I]f there was, I think, sufficient time to provide that to you, then I don't understand that. . . the excuse isn't fair. . . . [I]t should have been provided to you immediately if they felt that they had something that was probative. . . ."
In short, the judge of compensation claims did conduct "the case-specific analysis prescribed in Binger," ante p. 824, and learned that, although counsel for the employer and the carrier gave the surveillance materials to the claimant's counsel promptly after receiving themalbeit nine days latethere was no explanation whatsoever for the carrier's delay. Even though inquiry revealed no reason for disregarding the pretrial order, and the party violating the order offered no excuse for its noncompliance, the majority opinion insists that the judge of compensation claims abused his discretion in failing to place the burden on the claimant to show prejudice. Like then Chief Judge Zehmer, "I cannot conceive that the supreme court intended to allow a party in default under the pretrial order merely to do nothing to excuse that default and have the opposing party carry the burden of showing why the default should not be excused." Cedar Hammock Fire Dep't v. Bonami, 672 So.2d 892, 896 (Fla. 1st DCA 1996) (Zehmer, C.J., dissenting).
This is not a case, as Cedar Hammock was, where it was unmistakably clear that the claimant suffered no actual prejudice. In Cedar Hammock, the only prejudice alleged was that the claimant did not know the "identity" of a vocational counselor whom the employer failed to list as a witness. It was undisputed, however, that the objecting lawyer had been present when the claimant met with the vocational counselor at the lawyer's office; and that he had been given a copy of the vocational counselor's report. See 672 So.2d at 893. Similarly, in Walters v. Keebler Co., 652 So.2d 976, 977 (Fla. 1st DCA 1995), where the lawyer for the employer and the carrier objected to an unlisted witness, the claimant had promptly informed opposing counsel upon learning of a new witness, and opposing counsel had participated, along with claimant's counsel, in examining the witness before the hearing to discover the substance of the testimony. Nor is this a case where a rule was mechanistically applied. Compare Ryan's Family Steakhouse v. Whitlock, 886 So.2d 247, 248 (Fla. 1st DCA 2004); Cedar Hammock, 672 So.2d at 893.
The court's ruling today allows partieswithout so much as a pretext of justificationto violate, with impunity, pretrial orders entered by judges of compensation claims. This ill serves the purposes of discoveryto simplify issues and eliminate unfair surprise in time to encourage settlement of cases and avoid costly litigation, and, when necessary, to foster a balanced search for truth by advocates who have had adequate time to prepare for a fair trial. See Elkins v. Syken, 672 So.2d 517, 522 (Fla.1996). The majority opinion makes even deliberate disregard of the judge's discovery cutoff order something that may work to the offending party's *827 advantage; and the starting point for further litigation: a mini-trial in which the party who has conscientiously complied with the order has the burden to prove that his opponent's intentional noncompliance was not harmless. The presumption should go the other way. In preparing their cases, parties should be able to count on corresponding compliance by opposing parties. With all respect due generally rational counsel, today's decision leaves the "inmates" firmly in charge of the "asylum."